**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2075**

State of Minnesota,
Respondent,

vs.

Matthew Vaughn Diamond,
Appellant.

**Filed January 17, 2017
Affirmed
Smith, Tracy M., Judge**

Carver County District Court
File No. 10-CR-14-1286

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Eric E. Doolittle, Assistant County Attorney, Chaska, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Reyes, Judge; and Smith, Tracy M., Judge.

## S Y L L A B U S

A district court order compelling a criminal defendant to provide a fingerprint to unlock the defendant's cellphone does not violate the Fifth Amendment privilege against compelled self-incrimination.

## **O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant Matthew Vaughn Diamond appeals his convictions of second-degree burglary, misdemeanor theft, and fourth-degree criminal damage to property following a jury trial. On appeal, Diamond argues his convictions must be reversed because: (1) police seized his property in violation of the Fourth Amendment; (2) the district court violated his Fifth Amendment privilege against compelled self-incrimination by ordering him to provide his fingerprint so police could search his cellphone; and (3) the state's circumstantial evidence was insufficient. We affirm.

### **FACTS**

On October 30, 2014, M.H. left her Chaska home between 10:30 and 10:45 a.m. to run errands. M.H. returned home around noon and noticed that the attached garage's side-entry door appeared to have been kicked in from the outside. M.H. called the police after discovering that a safe, a laptop, and several items of jewelry were missing from her home. While waiting for police to arrive, M.H. found an envelope in her driveway that had the name of S.W. written on it. Police took photographs and measurements of the shoeprints left on the garage's side-entry door.

Detective Nelson of the Chaska Police Department used state databases to determine S.W.'s car model and license plate number and that S.W. had pawned several pieces of jewelry at a Shakopee pawn shop on October 30. M.H. later verified that the pawned jewelry was stolen from her home. On November 4, police located S.W.'s car, which Diamond was driving at the time. Diamond was arrested on an outstanding warrant

2

unrelated to this case. He was booked at the Scott County jail, where staff collected and stored his property, including his shoes and cellphone.

The following day, Detective Nelson went to the jail and viewed the property that was taken from Diamond. Detective Nelson observed similarities between the tread of Diamond's shoes and the shoeprints left on the garage's side-entry door. Detective Nelson informed the jail staff that she was going to seek a warrant to seize Diamond's property and gave instructions not to release the property to anyone. Later that day, S.W. attempted to collect Diamond's property but was told that it could not be released.

On November 6, Detective Nelson obtained and executed a warrant to search for, and seize, Diamond's shoes and cellphone. On November 12, Detective Nelson obtained an additional warrant to search the contents of Diamond's cellphone. Detective Nelson was unable to unlock the cellphone. She returned the warrant on November 21.

In December, the state filed a motion to compel Diamond to provide his fingerprint on the cellphone to unlock the phone. The motion was deferred to the contested omnibus hearing. Following that hearing, the district court issued an order, filed February 11, 2015, concluding that the warrant to search Diamond's cellphone was supported by probable cause and that compelling Diamond to provide his fingerprint to unlock the cellphone does not violate his Fifth Amendment privilege against compelled self-incrimination. The district court granted the state's motion to compel and ordered Diamond to provide a fingerprint or thumbprint to unlock his cellphone. Diamond refused to comply. On April 3, the district court found Diamond in civil contempt and informed him that

3

compliance with the order would remedy the civil contempt. Diamond provided his fingerprint, and police immediately searched his cellphone.

At a second omnibus hearing Diamond challenged the refusal to release his cellphone and shoes to S.W., arguing that it constituted a warrantless seizure not justified by any exception to the warrant requirement. The district court's April 3 order concluded that the seizure was justified by exigent circumstances and was tailored to protect against the destruction of evidence while a warrant was sought and obtained. Diamond thereafter brought a pro se motion to suppress all evidence derived from his cellphone and shoes, which the district court denied, relying on the previous orders from February 11 and April 3.

At Diamond's jury trial, S.W. testified that: (1) she believed she was working the day of the burglary; (2) the envelope found in M.H.'s driveway belonged to S.W., and it was in her car the last time she saw it; (3) S.W. sometimes let Diamond use her car when she was working; and (4) on the day of the burglary, Diamond gave her M.H.'s stolen jewelry, and the two of them traveled to the Shakopee pawn shop, where she sold the jewelry. In addition, the state also introduced evidence that: (1) Diamond's wallet and identification card were found in S.W.'s car; (2) Diamond and S.W. exchanged phone calls and text messages throughout the day of the burglary; (3) Diamond's cellphone pinged off cell towers near M.H.'s residence on the day of the burglary; (4) the tread pattern on Diamond's shoes was similar to the shoeprints on the garage's side-entry door; and (5) while in jail, Diamond told S.W. "the only thing that [the state is] going to be able to charge

4

me with is receiving stolen property" and that his attorney said the case would be dismissed if S.W. did not testify or recanted her statement.

The jury found Diamond guilty of second-degree burglary, misdemeanor theft, and fourth-degree criminal damage to property. The district court sentenced Diamond to 51 months in prison for the second-degree burglary and to 90 days in jail for the fourth-degree criminal damage to property.

Diamond appeals.

## ISSUES

I.    Did the district court err by not suppressing evidence obtained following the temporary seizure of Diamond's property?

II.   Did the district court err by ordering Diamond to provide his fingerprint so police could search his cellphone?

III.  Does the record contain sufficient evidence to support the jury's conclusion that Diamond committed second-degree burglary, misdemeanor theft, and fourth-degree criminal damage to property?

## ANALYSIS

### I.    The temporary seizure of Diamond's property did not violate the Fourth Amendment.

Diamond argues that the district court erred in denying his suppression motion because Detective Nelson's directions to jail staff not to release Diamond's property while she sought a warrant constituted an unreasonable seizure in violation of the Fourth Amendment. The district court concluded that the exigency exception to the warrant requirement applied. Diamond argues that the exigency exception is inapplicable because

5

Detective Nelson "searched" Diamond's property at the jail before providing instructions to jail staff.

In evaluating a pretrial order on a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012). When reviewing the applicability of the exigency exception, we look at the totality of the circumstances. *State v. Horst*, 880 N.W.2d 24, 33 (Minn. 2016). The state has the burden of showing that exigent circumstances justified the seizure. *Id.*

The Fourth Amendment protects the right of the people to be free from "unreasonable searches and seizures" of their "persons, houses, papers, and effects" by the government. U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655-56, 81 S. Ct. 1684, 1691-92 (1961) (incorporating the Fourth Amendment and the consequences for violating it into the Due Process Clause of the Fourteenth Amendment). A "seizure" of property within the meaning of the Fourth Amendment occurs when a government official meaningfully interferes with a person's possessory interest in the property. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984). "In general, warrantless searches and seizures are unreasonable in the absence of a legally recognized exception to the warrant requirement." *Horst*, 880 N.W.2d at 33.

A temporary seizure may be permissible under the Fourth Amendment "when needed to preserve evidence until police are able to obtain a warrant." *State v. Holland*, 865 N.W.2d 666, 670 n.3 (Minn. 2015). The United States Supreme Court has approved the temporary seizure of an individual to prevent him from destroying drugs before police could obtain and execute a warrant. *Illinois v. McArthur*, 531 U.S. 326, 331-32, 121 S. Ct.

6

946, 950 (2001). The Minnesota Supreme Court has observed that, "when law-enforcement officers 'have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant,' the officers may seize the property, 'pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it.'" *Horst*, 880 N.W.2d at 33-34 (quoting *United States v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637, 2641 (1983)).

Here, Detective Nelson instructed jail staff not to release Diamond's property while she sought a warrant. Detective Nelson's instructions to jail staff were meant to ensure that Diamond's shoes and cellphone, which Detective Nelson considered potential evidence, were not lost or destroyed. The following day, Detective Nelson obtained and executed a warrant to seize Diamond's shoes and cellphone.

In *Horst*, the Minnesota Supreme Court deemed a similar warrantless seizure lasting only one day to be justified. *Id.* at 34-35. There, police had seized the defendant's cellphone when she was interviewed at the police station prior to her arrest, and police obtained a warrant the following day. *Id.* The supreme court concluded that the seizure was justified by exigent circumstances because, as the United States Supreme Court had recently observed, "the owner of a cellphone . . . can quickly and easily destroy the data contained on such a device." *Id.* at 35 (citing *Riley v. California*, 134 S. Ct. 2473, 2486 (2014)). Thus, the temporary seizure of Diamond's cellphone at the jail was justified by exigent circumstances. The need to protect physical evidence from loss or destruction similarly justified the temporary seizure of Diamond's shoes. *See McArthur*, 531 U.S. at 331-32, 121 S. Ct. at 950.

Diamond argues that the exigent-circumstances exception does not apply because Detective Nelson "searched" Diamond's property at the jail prior to the seizure. As an initial matter, we observe that Diamond did not argue to the district court that the evidence should be suppressed because Detective Nelson's act of viewing his property at the jail constituted a "search" rendering the exigency exception for the seizure inapplicable. An appellate court generally will not consider matters not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). This rule applies to constitutional questions. *See In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (declining to address a constitutional issue raised for the first time on appeal from a termination of parental rights).

But even if Diamond's district court argument could be read expansively so as to encompass this argument, we still find it unpersuasive. Diamond does not provide any support for his conclusory assertion that Detective Nelson's act of viewing his property at the jail prior to obtaining a search warrant constituted a "search" under the Fourth Amendment. *See State v. Johnson*, 831 N.W.2d 917, 922 (Minn. App. 2013) ("A 'search' within the meaning of the Fourth Amendment occurs upon an official's invasion of a person's reasonable expectation of privacy." (citing *Jacobsen*, 466 U.S. at 114, 104 S. Ct. at 1656)), *review denied* (Minn. Sept. 17, 2013). Nor does he argue that such action was unreasonable.

As articulated in *McArthur*, we must determine whether "police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy." 531 U.S. at 332, 121 S. Ct. at 950. In *McArthur*, the United States Supreme Court

determined that the proper balance between law-enforcement needs and personal privacy permitted police to seize the defendant while they sought a warrant to search his trailer. *Id.* at 332, 121 S. Ct. at 950-51. Here, Detective Nelson properly balanced law-enforcement needs with Diamond's personal privacy. Diamond concedes that his property was lawfully seized and inventoried when he was booked into jail on November 4. The following day, Detective Nelson viewed Diamond's property and observed similarities between the tread of Diamond's shoes and the shoeprints left on M.H.'s garage's side-entry door. Recognizing the possibility that these items could be lost or destroyed, Detective Nelson instructed jail staff to maintain custody of the property and immediately sought a warrant. On November 6, Detective Nelson executed the warrant, seizing the cellphone and shoes. Before attempting to access the cellphone's contents, which plainly constitutes a search within the meaning of the Fourth Amendment, Detective Nelson obtained the November 12 search warrant. *See Riley*, 134 S. Ct. at 2495.

We conclude that the temporary seizure of Diamond's property was justified by exigent circumstances and that the district court did not err in denying Diamond's suppression motion.

## II. Diamond's Fifth Amendment privilege was not violated when the district court ordered him to provide his fingerprint so police could search his cellphone.

Diamond argues that the district court's order to provide his fingerprint to unlock his cellphone violated his Fifth Amendment privilege against compelled self-

9

incrimination.[1]  This is an issue of first impression for Minnesota appellate courts.  Whether

the district court violated Diamond's Fifth Amendment privilege against self-incrimination

is a question of law, which this court reviews de novo.  *State v. Kaquatosh*, 600 N.W.2d

153, 156 (Minn. App. 1999), *review denied* (Minn. Dec. 14, 1999).

The Fifth Amendment provides that no person "shall be compelled in any criminal

case to be a witness against himself."  U.S. Const. amend. V; *see Malloy v. Hogan*, 378

U.S. 1, 8, 84 S. Ct. 1489, 1493-94 (1964) (incorporating Fifth Amendment protections into

the Due Process Clause of the Fourteenth Amendment).  "The essence of this basic

constitutional principle is the requirement that the [s]tate which proposes to convict and

punish an individual produce the evidence against him by the independent labor of its

officers, not by the simple, cruel expedient of forcing it from his own lips."  *Estelle v.*

*Smith*, 451 U.S. 454, 462, 101 S. Ct. 1866, 1872 (1981) (quotation and emphasis omitted).

The Supreme Court has explained that "the privilege protects a person only against being

incriminated by his own compelled testimonial communications."  *Fisher v. United States*,

---

[1] Diamond also argues that the search of his cellphone violated the Fourth Amendment because, he asserts, the police did not have a valid warrant at the time his cellphone was searched in April 2015.  Diamond maintains that "no search warrant existed" in April because Detective Nelson had previously returned the November 12 search warrant on November 21 after unsuccessfully attempting to access the contents of the cellphone. However, Diamond did not make this argument at the contested omnibus hearing, where he challenged the probable cause supporting the November 12 warrant and opposed the state's motion for an order compelling him to provide his fingerprint.  Instead, Diamond waited until two days before trial to present this argument to the district court, asserting it for the first time during oral argument on his pro se motion to suppress evidence.  Because Diamond did not raise this argument at the omnibus hearing, the argument was not timely raised and is not reviewable on appeal.  *See State v. Brunes*, 373 N.W.2d 381, 386 (Minn. App. 1985), *review denied* (Minn. Oct. 11, 1985).

425 U.S. 391, 409, 96 S. Ct. 1569, 1580 (1976). Here, the record establishes that Diamond was compelled to produce his fingerprint to unlock the cellphone. The record also reflects that police obtained incriminating evidence once the cellphone was unlocked. Therefore, the question before this court is whether the act of providing a fingerprint to unlock a cellphone is a "testimonial communication."

In examining its application of Fifth Amendment principles, the Supreme Court has established that, "in order to be testimonial, [a criminal defendant's] communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself." *Doe v. United States*, 487 U.S. 201, 210, 108 S. Ct. 2341, 2347-48 (1988). The Supreme Court has further noted that

> [t]his understanding is perhaps most clearly revealed in those cases in which the Court has held that certain acts, though incriminating, are not within the privilege. Thus, a suspect may be compelled to furnish a blood sample; to provide a handwriting exemplar, or a voice exemplar; to stand in a lineup; and to wear particular clothing.

*Id.* at 210, 108 S. Ct. at 2347 (citing *United States v. Dionisio*, 410 U.S. 1, 7, 93 S. Ct. 764, 768 (1973) (voice exemplar); *Gilbert v. California*, 388 U.S. 263, 266-67, 87 S. Ct. 1951, 1953 (1967) (handwriting exemplar); *United States v. Wade*, 388 U.S. 218, 221-22, 87 S. Ct. 1926, 1929 (1967) (lineup); *Schmerber v. California*, 384 U.S. 757, 765, 86 S. Ct. 1826, 1832-33 (1966) (blood sample); *Holt v. United States*, 218 U.S. 245, 252-53, 31 S. Ct. 2, 6 (1910) (clothing)). In addition, the Supreme Court has recognized that "both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting." *Schmerber*, 384 U.S. at 764, 86 S. Ct. at 1832;

11

*see Doe*, 487 U.S. at 219, 108 S. Ct. at 2352 (Stevens, J., dissenting) ("Fingerprints, blood samples, voice exemplars, handwriting specimens, or other items of physical evidence may be extracted from a defendant against his will."); *State v. Breeden*, 374 N.W.2d 560, 562 (Minn. App. 1985) ("The gathering of real evidence such as blood samples, fingerprints, or photographs does not violate a defendant's [F]ifth [A]mendment rights.").

Diamond relies on *In re Grand Jury Subpoena Duces Tecum*, 670 F.3d 1335 (11th Cir. 2012), to support his argument that supplying his fingerprint was testimonial. In *In re Grand Jury*, the court reasoned that requiring the defendant to decrypt and produce the contents of a computer's hard drive, when it was unknown whether any documents were even on the encrypted drive, "would be tantamount to testimony by [the defendant] of his knowledge of the existence and location of potentially incriminating files; of his possession, control, and access to the encrypted portions of the drives; and of his capability to decrypt the files." *Id.* at 1346. The court concluded that such a requirement is analogous to requiring production of a combination and that such a production involves implied factual statements that could potentially incriminate. *Id.*

By being ordered to produce his fingerprint, however, Diamond was not required to disclose any knowledge he might have or to speak his guilt. *See Doe*, 487 U.S. at 211, 108 S. Ct. at 2348. The district court's order is therefore distinguishable from requiring a defendant to decrypt a hard drive or produce a combination. *See, e.g.*, *In re Grand Jury*, 670 F.3d at 1346; *United States v. Kirschner*, 823 F. Supp. 2d 665, 669 (E.D. Mich. 2010) (holding that requiring a defendant to provide computer password violates the Fifth Amendment). Those requirements involve a level of knowledge and mental capacity that

is not present in ordering Diamond to place his fingerprint on his cellphone. Instead, the task that Diamond was compelled to perform—to provide his fingerprint—is no more testimonial than furnishing a blood sample, providing handwriting or voice exemplars, standing in a lineup, or wearing particular clothing. *See Doe*, 487 U.S. at 210, 108 S. Ct. at 2347-48.

Diamond argues, however, that the district court's order effectively required him to communicate "that he had exclusive use of the phone containing incriminating information." This does not overcome the fact that such a requirement is not testimonial. In addition, Diamond provides no support for the assertion that only his fingerprint would unlock the cellphone or that his provision of a fingerprint would communicate his exclusive use of the cellphone.

Diamond also argues that he "was required to identify for the police which of his fingerprints would open the phone" and that this requirement compelled a testimonial communication. This argument, however, mischaracterizes the district court's order. The district court's February 11 order compelled Diamond to "provide a fingerprint or thumbprint as deemed necessary by the Chaska Police Department to unlock his seized cell phone." At the April 3 contempt hearing, the district court referred to Diamond providing his "thumbprint." The prosecutor noted that they were "not sure if it's an index finger or a thumb." The district court answered, "Take whatever samples you need." Diamond then asked the detectives which finger they wanted, and they answered, "The one that unlocks it."

13

It is clear that the district court permitted the state to take samples of all of Diamond's fingerprints and thumbprints. The district court did not ask Diamond whether his prints would unlock the cellphone or which print would unlock it, nor did the district court compel Diamond to disclose that information. There is no indication that Diamond would have been asked to do more had none of his fingerprints unlocked the cellphone. Diamond himself asked which finger the detectives wanted when he was ready to comply with the order, and the detectives answered his question. Diamond did not object then, nor did he bring an additional motion to suppress the evidence based on the exchange that he initiated.

In sum, because the order compelling Diamond to produce his fingerprint to unlock the cellphone did not require a testimonial communication, we hold that the order did not violate Diamond's Fifth Amendment privilege against compelled self-incrimination.[2]

## III. The record contains sufficient evidence to support Diamond's convictions.

Diamond argues that his convictions must be reversed because the state's circumstantial evidence does not exclude the rational hypothesis that Diamond merely committed the crime of transferring stolen property. When evaluating the sufficiency of circumstantial evidence, the reviewing court uses a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved." *Id.* "In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted

---

[2] We express no opinion regarding whether, in a given case, a defendant may be compelled to produce a cellphone password, consistent with the Fifth Amendment.

14

with the circumstances proved by the [s]tate." *Id.* at 598-99 (quotation omitted). The reviewing court "construe[s] conflicting evidence in the light most favorable to the verdict and assume[s] that the jury believed the [s]tate's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted).

Here, Diamond was convicted of second-degree burglary, misdemeanor theft, and fourth-degree criminal damage to property. A person is guilty of second-degree burglary if the person enters a dwelling without consent and with the intent to commit a crime. Minn. Stat. § 609.582, subd. 2(a) (2014). A person is guilty of theft if the person "intentionally and without claim of right takes . . . movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(a)(1) (2014). A person is guilty of fourth-degree criminal damage to property if the person intentionally causes damage to another's physical property without the other person's consent. Minn. Stat. § 609.595, subd. 3 (2014).

The circumstances proved support the jury's conclusion that Diamond committed these crimes. On October 30, 2014, M.H. returned home after running errands and discovered that someone had kicked in her garage's side-entry door and had stolen jewelry and a number of other items. Police recovered an envelope in M.H.'s driveway that had S.W.'s name written on it. S.W. testified that this envelope was in her car the last time she saw it. S.W. also testified that she believed she was working on the day of the burglary, and that she sometimes let Diamond use her car when she was working. Diamond's

15

cellphone pinged off cell towers near M.H.'s residence on the day of the burglary. S.W. also testified that, on the day of the burglary, Diamond gave her M.H.'s stolen jewelry, and the two of them traveled to the Shakopee pawn shop, where she sold the jewelry. Finally, Detective Nelson testified regarding consistencies between the tread of Diamond's shoes and the shoeprints on M.H.'s garage's side-entry door.

Diamond argues that certain circumstances do not exclude the possibility that he did not commit the crimes at issue. This argument is unconvincing. Diamond considers the individual circumstances proved in isolation. But the evidence as a whole firmly supports the jury's conclusion that Diamond kicked down M.H.'s garage's side-entry door, entered her dwelling without consent and with the intent to commit a crime, and stole M.H.'s property. Together, the circumstances proved are inconsistent with any other rational hypothesis. Therefore, we conclude that the record contained sufficient evidence to support the jury's conclusion that Diamond committed the offenses of second-degree burglary, misdemeanor theft, and fourth-degree criminal damage to property.

## DECISION

The district court did not err in denying Diamond's suppression motion because the temporary seizure of his property was justified by exigent circumstances and, therefore, did not violate the Fourth Amendment. The district court did not violate Diamond's Fifth Amendment privilege against self-incrimination by ordering him to provide his fingerprint so police could search his cellphone because such an order does not require a testimonial communication. Finally, the record contains sufficient evidence to support the jury's

16

conclusion that Diamond committed second-degree burglary, misdemeanor theft, and fourth-degree criminal damage to property.

**Affirmed.**