*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1901**

State of Minnesota,
Respondent,

vs.

James Michael Thomson,
Appellant.

**Filed November 17, 2025
Affirmed in part, reversed in part, and remanded
Larson, Judge**

Sibley County District Court
File No. 72-CR-23-147

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald E. Lannoye, Sibley County Attorney, Roxann B. Klein, Assistant County Attorney, Gaylord, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bentley, Presiding Judge; Wheelock, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant James Michael Thomson was convicted of eleven counts following a jury trial. On direct appeal, Thomson challenges seven of those convictions: two second-degree assault counts; four false-imprisonment counts; and one first-degree criminal

damage to property count. He argues the state presented insufficient evidence to prove his guilt for these offenses beyond a reasonable doubt. We conclude the state presented sufficient evidence to sustain Thomson's second-degree-assault and false-imprisonment convictions. However, we also conclude the state failed to prove that Thomson caused property damage exceeding $1,000. Accordingly, we affirm in part, reverse in part, and remand, directing the district court to vacate Thomson's first-degree criminal damage to property conviction, to enter a conviction for fourth-degree criminal damage to property, and for resentencing.

**FACTS**

The following factual summary is based on the evidence received at a jury trial. On April 15, 2023, sheriff's deputies responded to a report of an assault in rural Sibley County, Minnesota. That morning, four young men were driving along a gravel road scouting for turkeys when a dog ran in front of their truck near a driveway. The truck's driver (driver) struck the dog, and the impact severed the dog's tail from its body. After hitting the dog, driver parked the truck on the roadside near the end of the driveway. Wanting to notify the owner that he had hit the dog, driver and his front passenger walked to the front door of the house at the end of the driveway while the two backseat passengers remained in the truck.

After knocking on the front door and getting no answer, driver and front passenger walked to the back door. When there was no answer at the back door, driver and front passenger returned to the front door. As they returned, the owner, later identified as Thomson, opened the front door, held a semi-automatic pistol out to his side, and

2

discharged one or two rounds into the air. At the time, driver and front passenger were standing about five feet from the door facing Thomson. The backseat passengers, who were still in the truck, testified that they heard what sounded like gunshots. From the truck, they could not see what was happening at the front door but both recalled thinking that driver and front passenger had possibly been shot. The backseat passengers began to fear for their own safety.

After Thomson fired his pistol, he put it in his back pocket. Driver and front passenger walked back to the truck and got inside. Thomson walked over to where his dog had been hit and picked up the dog's severed tail. Thomson then approached the truck's driver-side door; driver opened the door to speak with Thomson. Thereafter, Thomson yelled at the young men and hit driver repeatedly with the tail. During the altercation, driver's phone fell out of his hand and onto the road. Thomson stomped on driver's phone. Thomson then took the pistol from his back pocket and shot the phone. Afterward, Thomson picked up the phone and threw it into a field. Driver's phone was never recovered.

At this point, driver shut the door and told the others to call 911. The 911 dispatcher instructed them to leave the area, so they drove about three-quarters of a mile away. There, driver pulled off the road and backed the truck against a closed gate with the front of the truck facing the road. The 911 dispatcher advised them that help was on the way, so the young men ended the call and waited for law enforcement to arrive. One of the backseat passengers called his mother (parent).

3

While the truck was backed up against the gate and before law enforcement arrived, Thomson sped down the road in his car toward the truck. Thomson parked his car in front of the truck—the two vehicles positioned in a "T" formation—preventing the young men from driving away. Thomson exited the car, walked over to the truck, and began pounding on the windows. Thomson yelled racial slurs and other expletives at the young men and pulled on the driver-side door handle so forcefully it shook the truck. Parent, who was still on the phone, heard the pounding and yelling. The events lasted for thirty to forty-five seconds; Thomson then got in his car and drove away.

After Thomson left, one of the backseat passengers called 911 again. This time, the dispatcher instructed them to drive to one of their homes and wait for law enforcement. Driver drove to his house where the deputies were dispatched. The deputies took statements from the four young men and parent. The deputies took photos of driver's hat, clothing, and truck, which were covered with blood, and remnants of dog flesh and fur. Later that afternoon, driver went to a store and purchased a new iPhone 14 Pro Max, which cost $1,210.

The state charged Thomson with four counts of second-degree assault under Minn. Stat. § 609.222, subd. 1 (2022); four counts of false imprisonment under Minn. Stat. § 609.255, subd. 2 (2022); first-degree criminal damage to property under Minn. Stat. § 609.595, subd. 1(4) (2022); possession of a pistol without a valid permit in a public place

under Minn. Stat. § 624.714, subd. 1a (2022); and fifth-degree assault under Minn. Stat. § 609.224, subd. 1(2) (2022).[1]

The matter proceeded to a two-day jury trial. The state called the four young men, parent, and the deputies, who all testified consistently with the above facts. The state introduced several pieces of evidence without objection, including photographs and the $1,210 receipt for driver's new phone. Thomson testified on his own behalf. During his testimony, he denied interacting with driver and front passenger at his front door. He admitted to speaking with driver at the truck and claimed he hit driver with the tail only once. He further admitted to carrying his pistol but denied brandishing it or shooting driver's phone before throwing the phone in the field. Thomson also denied blocking the truck with his car during the interaction at the gate.

The jury found Thomson guilty of all charges. The district court entered convictions on all eleven counts and then imposed a 36-month prison term on one count of second-degree assault. *See* Minn. Stat. § 609.035, subd. 1. (2022). The district court also ordered Thomson to pay $1,461.04 in restitution to driver.

Thomson appeals.

## DECISION

In this appeal, Thomson challenges seven of his eleven convictions. Broadly, he argues the state presented insufficient evidence to prove that he: (1) assaulted the backseat passengers when he shot driver's phone; (2) falsely imprisoned the four young men when

---

[1] Thomson was also charged with interruption of an emergency call under Minn. Stat. § 609.78, subd. 2(1) (2022), but the state dismissed the charge before trial.

he blocked the truck from leaving the gate; and (3) reduced the value of driver's phone by more than $1,000.

We address each of Thomson's challenges applying the sufficiency-of-the-evidence standard of review. *See State v. Salyers*, 858 N.W.2d 156, 160 (Minn. 2015). To do so, we must first determine whether the state used direct or circumstantial evidence. *See State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016). Direct evidence is "based on personal knowledge or observation and . . . if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotation omitted).

If the state relies on direct evidence, we apply "the traditional standard for evaluating the sufficiency of the evidence." *State v. Jones*, 4 N.W.3d 495, 501 (Minn. 2024). To do so, we "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the [factfinder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). Under the traditional standard, we view the evidence in the light most favorable to the verdict, and we assume the factfinder believed the state's witnesses and disbelieved any contrary evidence. *State v. Olson*, 982 N.W.2d 491, 495 (Minn. App. 2022).

When the state relies on circumstantial evidence, we apply a heightened two-step standard. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). First, we "identify the circumstances proved." *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). The

6

circumstances proved are "a subset of facts" identified "by resolving all questions of fact in favor of the jury's verdict." *Harris*, 895 N.W.2d at 600. "[W]e defer to the [factfinder's] acceptance of the proof of these circumstances" and "assume that the [factfinder] believed the State's witnesses and disbelieved the defense witnesses." *Silvernail*, 831 N.W.2d at 598-99 (quotations omitted). Second, we determine if the circumstances proved, in their entirety, "are consistent with guilt and inconsistent with any rational hypothesis except that of guilt," and "not simply whether the inferences that point to guilt are reasonable." *Id.* at 599 (quotations omitted). During this step, we do not defer "to the fact finder's choice between reasonable inferences." *State v. Andersen*, 784 N.W.2d 320, 329-30 (Minn. 2010) (quotation omitted). The circumstantial evidence the state presents "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).

With these standards in mind, we address Thomson's arguments in turn.

## I.

Thomson first argues the state presented insufficient evidence to prove he committed second-degree assault against the backseat passengers. To prove Thomson committed second-degree assault, the state needed to prove beyond a reasonable doubt that Thomson "assault[ed] another with a dangerous weapon." Minn. Stat. § 609.222, subd. 1.

7

In this context,[2] assault means "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10 (defining assault-fear).

Here, Thomson asserts that the state failed to prove beyond a reasonable doubt that he intended to cause the backseat passengers to fear immediate bodily harm or death when he shot driver's phone. Assault-fear is a specific-intent crime. *See State v. Fleck*, 810 N.W.2d 303, 308-09 (Minn. 2012). And intent is typically "proven with circumstantial evidence." *State v. Irby*, 967 N.W.2d 389, 396 (Minn. 2021). This includes "drawing inferences from the defendant's conduct, the character of the assault, and the events occurring before and after the crime." *In re Welfare of T.N.Y.*, 632 N.W.2d 765, 769 (Minn. App. 2001). The jury may also infer that a person intends the natural and probable consequences of their actions. *Irby*, 967 N.W.2d at 396. We agree with the parties that the state presented circumstantial evidence to prove intent in this case; therefore, we apply the circumstantial-evidence test.

Beginning with the first step, the state proved the following circumstances at trial: (1) the backseat passengers were in the truck when driver hit the dog and severed the dog's tail; (2) the backseat passengers waited in the truck while driver and front passenger went to Thomson's house; (3) Thomson fired one or two rounds into the air with a pistol while at his house; (4) the backseat passengers heard these shots and feared for their safety, and the safety of driver and front passenger; (5) Thomson put the pistol in his back pocket;

---

[2] Assault is defined as either assault-fear or assault-harm ("the intentional infliction of or attempt to inflict bodily harm upon another"). Minn. Stat. § 609.02, subd. 10 (2022). Here, the state offered no evidence that Thomson attempted to or physically harmed the backseat passengers. Thus, only the assault-fear definition is relevant to Thomson's argument.

(6) after walking to where the dog was hit, Thomson picked up the tail and approached the truck; (7) when driver opened the driver-side door, Thomson subjected the young men to verbal abuse; (8) the backseat passengers watched as Thomson repeatedly hit driver with the tail; (9) driver's phone fell onto the road while Thomson was hitting driver with the tail; (10) Thomson stomped on driver's phone; (11) Thomson took the pistol from his back pocket and shot the phone; (12) Thomson then picked up the phone and threw it into a field; (13) immediately thereafter, driver shut the driver-side door and told the others to call 911; and (14) the young men drove away looking for a safe location to wait for the deputies.

Moving to the second step, we analyze whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt. *See Silvernail*, 831 N.W.2d at 599. Thomson does not dispute that the circumstances proved are consistent with the hypothesis that he intended to cause the backseat passengers to fear immediate bodily harm or death. Instead, Thomson argues the circumstances proved support a rational hypothesis other than guilt—that he only intended to damage driver's phone. We find several cases instructive to resolve this argument.

First, in *State v. Barshaw*, the supreme court addressed whether the state presented sufficient evidence to support a first-degree assault-of-a-peace-officer conviction. 879 N.W.2d 356, 367 (Minn. 2016). Applying the assault-fear definition, the supreme court concluded the state proved intent when: (1) Barshaw had committed a murder; (2) Barshaw attempted to hide from law enforcement; (3) Barshaw knew the building was surrounded but attempted to escape; (4) Barshaw ignored officer commands to show his hands;

9

(5) while attempting to exit a door, Barshaw saw an officer, and raised a gun slightly, though not aiming it directly at the officer; and (6) the officer feared for his life and shot Barshaw. *Id*. at 367-68.

Next, in *State v. Taylor*, we affirmed a second-degree assault-with-a-firearm conviction. There, the state proved that Taylor: (1) approached the victim to engage in a verbal altercation; (2) yelled at the victim; (3) acted aggressively; and (4) held a gun inside his coat during the encounter. No. A19-0042, 2019 WL 7049564, at *3 (Minn. App. Dec. 23, 2019).[3] We concluded that, "[w]hile Taylor never took the gun out of his pocket, it [was] reasonable to infer that when a person approaches another while yelling, with his hand inside his coat apparently holding a gun with his finger near the trigger, that person intends to cause the other person fear." *Id*.

Finally, in *State v. Powelson*, we affirmed four second-degree assault convictions. There, the state proved: (1) a brief verbal altercation ensued between Powelson and the victims; (2) Powelson retrieved a gun; (3) Powelson brandished the gun above his head and fired the gun into the air; and (4) the victims fled. No. A23-0449, 2023 WL 8890524, at *4 (Minn. App. Dec. 26, 2023). We rejected Powelson's argument that the discharge of the gun was a warning shot intended to merely get the victims' attention, stating that Powelson's theory was inconsistent with a hypothesis of innocence because capturing the victims' attention through the fear of harm was the reason Powelson fired the gun. *Id*. at *4-5.

---

[3] This opinion is nonprecedential and, therefore, not binding. We cite nonprecedential opinions only as persuasive authority. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

In light of these opinions, we conclude the circumstances proved support only one reasonable inference—that Thomson intended to cause the backseat passengers to fear bodily harm or death. Like in *Barshaw*, Thomson engaged in conduct prior to shooting driver's phone that put the backseat passengers in a state of fear—specifically, firing the pistol while at his house, yelling at the young men, physically assaulting driver, and stomping on driver's phone. Further, like in *Taylor*, he had the pistol in his back pocket while he yelled at the young men and physically assaulted driver. And, like in *Powelson*, he brandished the pistol and shot driver's phone, escalating the altercation. Because the backseat passengers fearing for their personal safety was the natural and probable consequence of these actions, *see Irby*, 967 N.W.2d at 396, the only reasonable inference from the circumstances proved is that Thomson intended to cause the backseat passengers to fear bodily harm or death.

Therefore, we conclude the state presented sufficient evidence to prove Thomson's guilt for the second-degree-assault offenses beyond a reasonable doubt, and we affirm the convictions.

## II.

Thomson next challenges whether the state presented sufficient evidence to prove he falsely imprisoned the young men when he used his car to block the truck from leaving the gate. To sustain the false-imprisonment conviction, the state had to prove beyond a reasonable doubt that Thomson "intentionally confine[d] or restrain[ed]" the young men "without [their] consent." Minn. Stat. § 609.255, subd. (2). As relevant to Thomson's arguments, the state relied on direct evidence—witness testimony—to prove the false-

11

imprisonment claim. *State v. Brazil*, 906 N.W.2d 274, 278 (Minn. App. 2017), *rev. denied* (Minn. Mar. 20, 2018) (stating a witness's testimony about what they saw or heard is direct evidence). Therefore, we apply the direct-evidence test.

Thomson first argues the state presented insufficient evidence to prove he "confine[d] or restrain[ed]" the young men. To satisfy this element, the state had to prove Thomson caused a "total and complete" restriction of movement. *Peterson v. Sorlien*, 299 N.W.2d 123, 128 (Minn. 1980). A restriction is not "total and complete" if the alleged victim "is aware of a reasonable means of escape that does not present a danger of bodily or material harm." *Id*.

Thomson asserts that the state did not prove that he "confine[d] or restrain[ed]" the young men because they had a reasonable means of escape—they could have exited the truck. We are not persuaded. Each young man testified that Thomson parked in front of the truck preventing them from driving away. At this time, they knew Thomson had a pistol and had seen him use it. They also witnessed Thomson physically assault driver with the tail and had been subjected to verbal abuse. Moreover, while Thomson's car blocked the truck, Thomson aggressively approached the truck, pounded on the windows, shook the truck using the driver-side door handle, and subjected the young men to further verbal abuse. Parent corroborated the young men's testimonies. This direct evidence was sufficient to prove beyond a reasonable doubt that Thomson "confine[d] or restrain[ed]" the young men because they had no "reasonable means of escape that [did] not present a danger of bodily or material harm." *See Peterson*, 299 N.W.2d at 128.

12

Thomson argues second that the state failed to prove false imprisonment because he only restrained the young men for thirty to forty-five seconds. But Thomson cites no caselaw to support his argument. *See State v. Bursch*, 905 N.W.2d 884, 889 (Minn. App. 2017); *see also State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (stating that arguments are forfeited if the "brief contains no argument or citation to legal authority in support of the allegations"). And the statute does not specify a minimum duration for restraint. *See* Minn. Stat. § 609.255, subd. (2).

For these reasons, we conclude the state proved beyond a reasonable doubt that Thomson falsely imprisoned the four young men, and we affirm the convictions.

## III.

Lastly, Thomson challenges whether the state presented sufficient evidence to prove he committed first-degree criminal damage to property. To prove criminal damage to property, the state must prove the defendant intentionally caused damage to the physical property of another without consent. Minn. Stat. § 609.595, subds. 1-3 (2022). Thereafter, the degrees of culpability are generally[4] determined by the reduction in the value of the damaged property, as "measured by the cost of repair and replacement." Minn. Stat. § 609.595, subds. 1(4)-(5), 2; *see also State v. Powers*, 962 N.W.2d 853, 859 n.1 (Minn. 2021) ("Although other factors may distinguish among degrees of the crime . . . even these aggravating factors are categorized by the amount of damage caused.").

---

[4] Section 609.595, subdivisions 1(1)-(3), 2(2), 3, provide for circumstances where a defendant may commit criminal damage to property without meeting a value threshold.

As relevant here, to sustain a first-degree conviction, the state must prove "the damage *reduce[d] the value* of the property by more than $1,000." Minn. Stat. § 609.595, subd. 1(4) (emphasis added). And to sustain a fourth-degree conviction, the state need not prove a value threshold. *Id.*, subd. 3; *see also State v. Diamond*, 890 N.W.2d 143, 152 (Minn. App. 2017), *aff'd*, 905 N.W.2d 870 (Minn. 2018) ("A person is guilty of fourth-degree criminal damage to property if the person intentionally causes damage to another's physical property without the other person's consent.").

The parties present competing arguments regarding the evidence the state must produce to prove the reduction in value of the damaged property. The state argues that to prove the reduction in value, it simply needs to show the amount the victim paid to replace the damaged property. Thomson disagrees, arguing the state needs to present evidence regarding the nature of the damaged property to ascertain the reduction in value.

We conclude the supreme court resolved this issue in *Powers*, 962 N.W.2d at 858. There, the supreme court interpreted the language "damage reduces the value of the property . . . measured by the cost of repair and replacement" in section 609.595, subdivision 1(4).[5] *Id.* Resolving whether the state could satisfy the "cost of repair or replacement" element with a reasonable estimate of the cost to the victim—rather than a specific amount—the supreme court held the statute "unambiguously allows for reasonable estimates to be considered when assessing the reduction in the value of property as a result of the damage." *Id.* at 859. After concluding this result was consistent with the dictionary

---

[5] Since *Powers*, there have been no intervening amendments to the statute. *Compare* Minn. Stat. § 609.595, subd. 1(4) (2020), *with* Minn. Stat. § 609.595, subd. 1(4) (2022).

14

definitions of the relevant terms, the supreme court further reasoned that allowing for reasonable cost estimates was consistent with the structure of the statute. *Id*. Noting that the "degrees of culpability within the statute are demarcated principally by the extent of the damage caused," the supreme court concluded "the only logical reading of the statute's plain language and structure [was] to focus the assessment of the degree of culpability on the *defendant's* actions, not on the action or inaction of the victim." *Id*. at 859-60.

Applying this precedent, we agree with Thomson that the only logical reading of section 609.595, subdivision 1(4), requires the state to present evidence regarding the nature of the damaged property to prove the reduction in value. *See* Minn. Stat. § 609.595, subd. 1(4). To reach a different conclusion would allow for the absurd result that a victim's actions could dictate the degree of a defendant's culpability. *See State v. Suspitsyn*, 941 N.W.2d 423, 427 (Minn. App. 2020) (noting that we presume "the legislature does not intend absurd or unreasonable results, and we give a reasonable and sensible construction to criminal statutes" (citations omitted)), *rev. denied* (Minn. May 27, 2020). For example, a defendant could damage a $30 phone and, afterward, the victim elect to purchase a $1,100 phone as a replacement. Under the state's theory, the defendant is guilty of first-degree, rather than fourth-degree, criminal damage to property solely because the victim elected to buy an $1,100 replacement. We conclude this result is contrary to *Powers* and its holding that "the only logical reading of [section 609.595, subdivision 1(4)'s] plain language and structure is to focus . . . on the *defendant's* actions, not on the action or inaction of the victim." *See* 962 N.W.2d at 859-60. Therefore, the state must present evidence regarding the nature of the damaged property to prove the reduction in value. *See id.*

Applying this conclusion, we evaluate whether the state presented sufficient evidence to prove the damage Thomson caused to driver's phone "reduce[d] the value of the [phone] by more than $1,000." First, we conclude the state did not prove this element with direct evidence. The state relied on driver's testimony and the receipt showing that driver paid $1,210 to purchase a new iPhone 14 Pro Max to prove the replacement cost. Driver testified that he purchased the iPhone 14 Pro Max to "replace" the phone Thomson damaged, but he did not otherwise offer testimony regarding the brand, year, or original cost of the damaged phone he replaced. *See State v. Provost*, No. A20-0850, 2021 WL 1604687, *1 (Minn. App. Apr. 26, 2021) ("According to [victim], he had originally purchased the damaged laptop for approximately $2,575 in 2015."), *rev. granted* (Minn. July 20, 2021) *and order granting rev. vacated* (Minn. Sept. 21, 2021). We, therefore, conclude the state did not prove the "reduce[d] value" of driver's phone with direct evidence.

Because the state failed to prove the element with direct evidence, we apply the circumstantial-evidence test. *See State v. Porte*, 832 N.W.2d 303, 309-10 (Minn. App. 2013) (applying circumstantial-evidence standard of review because state introduced insufficient direct evidence). Starting with the first step, as relevant to this claim, the state proved: (1) driver dropped his phone on the ground; (2) Thomson stomped on and shot driver's phone while it was on the ground; (3) Thomson threw driver's phone into a field, and it was never recovered; (4) driver purchased a new phone the same day as the incident; (5) driver purchased an iPhone 14 Pro Max for $1,210; (6) driver purchased the iPhone 14 Pro Max to replace the phone Thomson damaged.

16

Moving to the second step, based on the circumstances proved, it is reasonable to infer that driver owned a phone comparable to an iPhone 14 Pro Max and, therefore, $1,210 reflected the reduction in value as measured by the replacement cost. But given the lack of any information regarding the phone Thomson damaged, it is equally reasonable to infer the iPhone 14 Pro Max was not comparable to driver's original phone and that purchasing a replacement for driver's original phone would have cost less than $1,000, either because driver owned a different model of iPhone or a different brand of phone altogether. Accordingly, we agree with Thomson that the state failed to prove that the reduction in the value of the phone was more than $1,000 as measured by the cost of repair or replacement.

Nevertheless, we disagree with Thomson that the state's failure to prove the reduction in value requires reversal of the conviction. Instead, we conclude the evidence produced at trial proves that Thomson committed fourth-degree[6] criminal damage to property under section 609.595, subdivision 3. In accordance with Minn. R. Crim. P. 28.02, subd. 12(c), we may order "reduction of the conviction to a lesser included offense or to an offense of lesser degree, as the case may require." *See also State v. Selseth*, 933 N.W.2d 541, 545 (Minn. App. 2019); *State v. Pratt*, No. A18-1605, 2019 WL 4010197, at *2 (Minn. App. Aug. 26, 2019), *rev. denied* (Minn. Nov. 19, 2019). Applying that rule, we order the reduction of Thomson's first-degree criminal-damage-to-property conviction

---

[6] Second- or third- degree criminal damage to property requires the state to prove damage of certain a value threshold, unless certain aggravating circumstances are proved. *See* Minn. Stat. § 609.595, subds. 1a-2. Because the state's evidence does not establish a value threshold, and none of the aggravating circumstances are present, the state's evidence was only sufficient to prove beyond a reasonable doubt that Thomson committed fourth-degree criminal damage to property.

to fourth-degree criminal damage to property.  Thus, we reverse in part and remand, directing the district court to vacate Thomson's first-degree criminal-damage-to-property conviction, to enter a conviction for fourth-degree criminal damage to property, and for resentencing.

**Affirmed in part, reversed in part, and remanded.**